UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

L. BETH SUTHERLAND,
    Plaintiff,

vs.

CITY OF CINCINNATI, et al.,
    Defendants.

Case No. 1:12-cv-205

Speigel, J.
Litkovitz, M.J.

ORDER

Plaintiff L. Beth Sutherland brings this action alleging disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), and Ohio Rev. Code § 4112.02; age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(1) and Ohio Rev. Code § 4112.02; conspiracy to interfere with civil rights under 42 U.S.C. § 1985(3); and invasion of privacy, defamation, and intentional and negligent infliction of emotional distress under Ohio law. Plaintiff names as defendants the City of Cincinnati ("City"), City Solicitor John P. Curp, Thomas R. Klumb, the head of the City's Real Estate Department, and former interim City Solicitor Patricia M. King. This matter is before the Court on defendants' motion to compel (Doc. 23), plaintiff's response in opposition (Doc. 30), and defendants' reply in support of the motion to compel. (Doc. 36).

**I. Background**

Plaintiff filed the complaint against defendants in March 2012. (Doc. 1). Plaintiff alleges she was employed by the City as a Legal Assistant beginning in 1997 and as a Real Estate Specialist following her promotion in 2009. (*Id.*, ¶ 10). Plaintiff alleges she suffers from a disability as defined under the ADA, specifically a primary immunodeficiency disease known as common variable immunodeficiency disease (CVID). (*Id.*, ¶¶ 14, 15). Plaintiff alleges her

CVID worsened in 2005, forcing her to take leave under the Family and Medical Leave Act ("FMLA") in 2006 and to request reasonable accommodations prior to returning from leave in August 2006. (*Id.*, ¶¶ 14, 15, 16). Plaintiff alleges she was granted her requests for an enclosed office and air cleaner. (*Id.*, ¶ 17). Plaintiff asserts she also required the reasonable accommodations of a flexible work schedule and access to a lap top and cell phone so that she could work from home and receive treatments when necessary.[1] (*Id.*, ¶ 18). In addition to certain accommodations, plaintiff also was granted FMLA leave in July 2008 due to exacerbation of her condition. (*Id.*, ¶ 20). Upon her return to work in 2009, her accommodations which allowed her to work from home were revoked, she was laid off effective January 3, 2010, and she lost her health benefits and other employer provided benefits. (*Id.*, ¶¶ 22, 24, 25). The loss of medical insurance was particularly stressful for plaintiff because of her disability, her related need for health care, and the great difficulty a person with CVID faces in obtaining health care. (*Id.*, ¶ 25). Subsequent to her lay off, plaintiff obtained employment with a consulting firm that regularly provides consulting services to the City, and she now performs substantial duties on behalf of the Metropolitan Sewer District as a third-party contractor and consultant. (*Id.*, ¶¶ 31, 34). Defendants Curp and Klumb have made inflammatory statements about the services provided by plaintiff and her employer, which have inhibited her ability to market her services. (*Id.*, ¶ 37). Plaintiff seeks as damages back wages in excess of $10,000; lost benefits, including health benefits and disability benefits; $5,000,000 in punitive and compensatory damages; and compensation for all counseling, medical care, and time lost from work. (*Id.*, p. 14).

Defendants filed the instant motion to compel on April 30, 2013, seeking answers to

---

[1] Plaintiff does not allege either whether she requested these accommodations or whether the accommodations were provided to her.

interrogatories and the production of documents in response to requests initially propounded to plaintiff on July 17, 2012. (Doc. 23, Exh. B). Defendants represent that multiple good faith attempts to resolve this matter extrajudicially have failed, and they have attached an affidavit in support of their representation. (*Id.* at 14-15, Affidavit of Gerron C. McKnight).

## II. Motion to Compel Standard

Fed. R. Civ. P. 37 provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production or inspection" if a party fails to provide discovery responses. Fed. R. Civ. P. 37(a)(3). Rule 37(a) provides that "an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(3). The burden of proof is on the party opposing the motion to compel to show in what respects the discovery requests are improper. *Kafele v. Javitch, Block, Eisen & Rathbone,* No. 2:03-cv-638, 2005 WL 5095186, at *1 (S.D. Ohio April 20, 2005) (citing *Trane Co. v. Klutznick,* 87 F.R.D. 473 (W.D. Wisc. 1980)).

## III. Discussion

Defendants move for an order compelling plaintiff to answer fully Interrogatories 7, 8, 9 and 10 included in Defendants' First Set of Interrogatories and to produce documents responsive to Document Requests 6, 7, 8, 13, 14, 15, 16, 18, 23 and 24. (Doc. 23, Exh. B). The requests relate to (1) plaintiff's income and sources of income during and after her employment with the City; (2) plaintiff's medical records for a period of at least ten years; (3) plaintiff's employment and wages prior to her employment with the City; and (4) plaintiff's communications with City employees both during and after her employment. The Court will address whether defendants are entitled to discovery of each category of requested information.

**A. Information regarding plaintiff's income/sources of income during and after her employment with the City (Interrogatories 7, 8; Document Request 18).**

Defendants seek employment information, including self-employment information, for the period covering the end of plaintiff's employment with the City to the present, including the names and addresses of employers, dates of employment, compensation, and benefits (Interrogatory 7); all other compensation or income plaintiff has received from any source during this same time period (Interrogatory 8); and copies of all documents relating to plaintiff's income or earnings, including joint income, for the period of plaintiff's employment with the City up to the date of trial, including local and state income tax returns with schedules and working papers (Document Request 18). (Doc. 23, Exh. B, pp. 5-6; Document Requests, p. 6). Defendants acknowledge that plaintiff has provided her federal tax returns for 2010 and 2011. Defendants contend they require the additional information they seek because information pertaining to plaintiff's earnings and assets, her ability to work, her work contacts, and her work sites is relevant to the following issues: (1) back pay; (2) the alleged loss of health insurance resulting from her termination, which defendants assert relates to her claim for damages, the hourly rate she currently charges as a contractor, and whether she is able to be insured; (3) plaintiff's alleged disability status and whether she is substantially limited in the major life activity of working; (4) whether plaintiff has suffered severe emotional distress and loss of enjoyment of life; and (5) whether plaintiff performed work as an independent contractor for another entity during normal business hours while employed by the City and during periods when she was on medical leave of absence. (Doc. 23 at 4-5). Defendants also allege that the addresses on tax returns plaintiff filed during her employment with the City are relevant to the issue of whether plaintiff was in compliance with the City's residency requirement during certain years of her employment. (*Id.*

4

at 4).

Plaintiff states in her responsive memorandum that in addition to the 2010 and 2011 returns she has already provided, she will provide her 2012 federal return once it has been filed. (Doc. 30 at 2). Plaintiff objects to defendants' requests for additional information pertaining to her income for years she was employed by the City. Plaintiff alleges that the City is aware of what it paid her while she was its employee, and no other information contained in her tax returns for those years is relevant. Plaintiff therefore argues that her tax returns for the years she was employed by the City should be excluded from discovery pursuant to Fed. R. Civ. P. 26(b)(2)(C) on the ground the information sought is cumulative or duplicative.[2] (*Id.*). Plaintiff also generally alleges that her tax returns for the years following her termination "should provide Defendants with all necessary information about her income." (Doc. 30 at 3). Plaintiff asserts that she has disclosed numerous documents about her enrollment in the only health insurance coverage that was purportedly available to her following her termination as well as the costs of that coverage, and she contends, but does not explain how, defendants have mischaracterized deposition testimony she provided about the relationship between her hourly rate as a contractor and her health insurance.

In addition, plaintiff argues that her earnings are not relevant to her disability status because discovery the parties have conducted thus far establishes she had a disability as defined by the ADA while employed by the City; further discovery on this subject would be "cumulative, duplicative, and futile"; and whether she is currently able to work cannot help to substantiate

---

[2] Fed. R. Civ. P. 26(b)(2)(C)(i) states: "On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]"

5

whether she was disabled while employed by the City and whether her disability was the reason she was laid off. (Doc. 30 at 3-4). Plaintiff therefore argues that information related to her current ability to work should be excluded from discovery pursuant to Fed. R. Civ. P. 26(b)(2)(C).

Plaintiff argues that information about her income is not relevant to her claims of emotional distress because "[m]oney does not buy happiness, nor does it negate emotional distress," and no amount of money can provide her with the stability of a government pension. (Doc. 30 at 4).

Moreover, plaintiff argues that defendants are not entitled to documents they have requested to ascertain whether she complied with the City's residency requirements during certain years of her employment. Plaintiff alleges she has supplied numerous documents that substantiate her address during her employment, so that her tax returns would add nothing on this point. Plaintiff also contends that the City's residency requirements have been determined to be unlawful and therefore cannot serve as an after-acquired justification for her termination. (Doc. 30 at 4-5, citing cases).

Finally, plaintiff acknowledges she testified at her deposition that she engaged in secondary employment "a long time ago" while employed at the City, although she could not identify the time period. (Doc. 30 at 5, citing Exh. A, Sutherland Depo., pp. 28-30). She argues defendants are engaged in a fishing expedition, and she should not be compelled to "disclose ancient tax returns" related to secondary employment which lasted for a limited period of approximately one year. (*Id.* at 6).

The Court determines that defendants are entitled to copies of plaintiff's federal, state and local tax returns, including all schedules, for the period beginning 2005 and continuing to the

date of trial. (Document Request 18). These documents are either relevant to the issues in this case or could lead to the discovery of admissible evidence pertaining to relevant issues because plaintiff has placed her income at issue during these years. *See Credit Life Ins. Co. v. Uniworld Ins. Co. Ltd.*, 94 F.R.D. 113, 118-121 (S.D. Ohio 1982) (party's tax information is discoverable where the party puts its income at issue). Plaintiff alleges that her CVID worsened in 2005, causing her to take leave under the FMLA and to request reasonable accommodations for "her disability" in 2006. (Doc. 1, ¶ 16). Plaintiff's tax returns for the period 2005 to the date she was terminated may disclose whether plaintiff engaged in secondary employment after her condition worsened but while she was still employed by the City, which is relevant to the issue of whether plaintiff was disabled during the relevant time period. Plaintiff was unable to pinpoint the time frame during which she engaged in secondary employment (Doc. 30, Exh. A, pp. 28-30), so defendants are entitled to information that may disclose whether this occurred during the relevant time frame. Plaintiff has not shown that such information should be excluded under Rule 26(b)(2)(C)(i) given that income plaintiff earned from secondary employment would not be part of her City employment records.

Defendants are not entitled to plaintiff's tax returns for any year prior to 2005. Those documents are not relevant to any claim or defense in this case. Insofar as defendants seek the returns to show plaintiff may have violated the City's residency requirement, defendants allege only that the addresses on the returns are relevant to show whether plaintiff was in compliance with the City's residency requirement "during certain years of her employment." (Doc. 23 at 4). They allege that documents she produced suggest she lived in Kentucky "during a time it was deemed improper to do so," but defendants have not submitted the documents they reference and have not narrowed the time frame for their request. (Doc. 36 at 5). Defendants are not entitled

to plaintiff's tax returns for all the years she was employed by the City based on their generalized allegation.

Defendants are entitled to copies of plaintiff's state and local tax returns and schedules for the years following the termination of her employment. The nature of plaintiff's post-termination employment is relevant to the issue of whether she was disabled while employed by the City. Plaintiff's post-termination earning capacity is relevant to her claims that she was disabled and that she suffered severe emotional distress as a result of defendants' actions. Plaintiff's earnings following her termination are also relevant to her claims for damages, including her claim for damages resulting from severe emotional distress and her claim that she suffered lost wages and other benefits as a result of defendants' defamatory statements questioning her professional ability. (Doc. 1, ¶ 75). Plaintiff's earnings are also relevant to the issue of mitigation of damages.

Insofar as defendants seek "a copy of all documents that relate to Plaintiff's income or sources of revenue or earnings, including joint income" during the time period she worked for the City up until the date of trial (Document Request 18), defendants' request is overly broad. Defendants should be able to obtain the information they need pertaining to plaintiff's earnings from her federal, state and local tax returns and schedules for the years 2005 to the date of trial.

Specific information pertaining to plaintiff's employment following her termination as requested in Interrogatories 7 and 8 is discoverable to the extent such information is not cumulative or duplicative of information disclosed on plaintiff's tax returns. Information pertaining to the nature of plaintiff's post-termination employment, earning capacity, and benefits may be relevant to issues of plaintiff's alleged disability and damages or may lead to the discovery of relevant evidence on these issues. To the extent such information is not disclosed

on plaintiff's tax returns, plaintiff is required to provide this information.

For these reasons, defendants' motion to compel answers to Interrogatories 7 and 8 and Document Request 18 is granted in part as set forth above.

**B. Information related to plaintiff's medical records (Document Requests 14, 15, 16).**

Defendants seek copies of "all documents" relating to plaintiff's mental, emotional or psychiatric health; all prescription medications plaintiff has taken or been prescribed in the last ten years through the date of trial; and all medical records from any facility or provider that has provided mental health or medical services to plaintiff in the last ten years through the date of trial. (Doc. 23 at 7-9; Exh. B, Document Requests, pp. 5-6). Defendants contend that the medical records are relevant to the following matters: (1) plaintiff's allegation that she had a tendency to get sick all of her life; (2) absences she accrued well before 2005, which she attributes to her later diagnosed CVID; (3) the defense that plaintiff was provided more accommodations than the law or her condition required; (4) whether a Mayo Clinic doctor questioned the diagnosis of CVID; (5) plaintiff's health while working as an independent contractor at the Metropolitan Sewer District following her termination and her allegation that she is uninsurable; and (6) plaintiff's claim of emotional distress, and specifically whether an alleged diagnosis of lymphoma contributed to plaintiff's emotional distress.

Plaintiff objects to defendants' request for medical records on the grounds it is overbroad, it is not intended to lead to admissible evidence, and it is invasive. (Doc. 30 at 6-7, citing *Info-Hold, Inc. v. Sound Merchandising, Inc.*, 538 F.3d 448, 457 (6th Cir. 2008) ("district courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce.") (citing *Surles ex rel. Johnson v. Greyhound Lines, Inc.*,

474 F.3d 288, 305 (6th Cir. 2007) (citing Fed. R. Civ. P. 26(b)(2)); *accord Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978) (Rule 26 "does not, however, permit a plaintiff to 'go fishing' and a trial court retains discretion to determine that a discovery request is too broad and oppressive.")). Plaintiff asserts she has provided substantial health records, and she "does not grasp why Defendants take issue with [her] testimony that she has long had a tendency to get sick" as she "has a primary immune disorder, which of course leads to increased instances of illness." (Doc. 30 at 6). Plaintiff cites ADA law which holds that the question of whether an impairment constitutes a disability under the ADA should not demand extensive analysis, and which recognizes that an episodic condition can be a disability under the ADA. (*Id.* at 6-7). Plaintiff alleges that it is "insulting" for defendants to imply that she does not have the immune disorder she claims to have. (*Id.* at 6). At the same time, plaintiff alleges that whether she actually has CVID is immaterial because the City regarded her as disabled and provided accommodations for her disability, and she also alleges that it is immaterial whether the City accommodated her disability because she is not asserting a claim for failure to accommodate. In addition, plaintiff submits that defendants are not entitled to discover medical records in order to determine whether her medical problems contributed to her emotional distress because she concedes that "her serious diagnoses and inability to become well contributed to her emotional distress," but the City nonetheless remains liable for any emotional distress it caused. (Doc. 30 at 8). Finally, plaintiff contends that it would not be appropriate for the Court to order her to allow defendants to obtain her medical records, presumably by having her sign a release. (*Id.* at 8-9, citing *Moody v. Honda of America Mfg., Inc.*, 2006 WL 1785464, at *4 (S.D. Ohio 2006) ("nothing in the Federal Rules of Civil Procedure appears to authorize a court to direct a party to litigation whose medical condition has been placed at issue to sign a medical release

authorizing the opposing party to obtain medical records directly from that party's treating physician or other healthcare professional.").

Plaintiff has placed her physical and mental health at issue by presenting claims of disability discrimination and the infliction of severe emotional distress for which she claims extensive damages. Contrary to plaintiff's position, whether she suffered from a disabling condition while employed by the City is material to her claims of disability discrimination. Medical records from 2005, the date plaintiff's condition allegedly worsened to the point where it became disabling, until plaintiff's termination date are relevant to this issue or may lead to the discovery of evidence that is relevant to the issue of plaintiff's alleged disability. In addition, plaintiff has indicated there may be evidence in her medical records that her medical condition caused her severe emotional distress. Medical records generated following plaintiff's termination are relevant to the issue of whether defendants' actions caused the severe emotional distress plaintiff alleges and the damages she seeks.

Although defendants are entitled to plaintiff's medical records, the scope of the instant request is overbroad. Defendants have not shown a need for plaintiff's medical records prior to the date she allegedly became disabled. Defendants' motion to compel responses to Document Requests 14, 15, 16 is therefore granted for the period January 1, 2005 to the present. Plaintiff must comply with these requests by obtaining medical records from any healthcare professional who provided treatment to her during this time period and to produce those records in accordance with this order.

### C. Plaintiff's employment and wages prior to her employment with the City (Interrogatory 9; Document Requests 7, 8, 23).

Defendants seek information pertaining to plaintiff's employment and wages earned prior

to her employment with the City. (Doc. 23 at 9-10; Exh. B, p. 6; Document Requests, pp. 4, 8). In addition to wage information, defendants seek documents relating to any complaints made about plaintiff and disciplinary actions taken against her at her previous places of employment, copies of all previous versions of plaintiff's resume, the resume plaintiff used when she applied for employment with the City, and any subsequent versions of resumes she used. Defendants allege that these are "valuable indicators" of her qualifications for employment and earning potential and are relevant to whether defendants Curp and Klumb tarnished her reputation as alleged in her defamation claim. Plaintiff objects to providing such information on grounds of relevancy. Plaintiff's objection is well-taken as defendants have not shown how plaintiff's employment and wage history prior to her employment with the City is relevant to her discrimination and other claims against defendants. Defendants' requests for discovery of pre-employment information (Interrogatory 9; Document Requests 7, 8, 23) are denied.

**D. Plaintiff's post-termination interactions with current and former City employees (Interrogatory 10; Document Requests 6, 13, 24).**

Defendants seek information regarding plaintiff's contacts with all former or current City employees since the date of her termination, including the date, place, mode and subject of the communications; copies of all documents constituting or relating to communications between plaintiff and any representative of the City; copies of all documents constituting or relating to communications plaintiff has had or attempted to have with all current or former employees of the City; and copies of all documents related to individuals plaintiff has identified as having knowledge of the allegations of the complaint. (Doc. 23 at 10-11; Exh. B, p. 6; Document Requests, pp. 4-5, 8). Defendants contend this information is relevant to whether plaintiff's CVID requires her to limit contact with people; whether defendants Curp and Klumb defamed

her and inhibited her attempts to market her services; and the biases of potential witnesses. Defendants assert that they are not trying to chill plaintiff's future associations with individuals because they are asking her only about contacts that have actually occurred.

Plaintiff objects to defendants' requests for information regarding her contacts with former and current City employees as overbroad, noting the requests make no distinction between professional or personal interaction or between a lengthy or chance encounter. Plaintiff objects to defendants' request for information regarding anyone who has knowledge of the allegations of the complaint on grounds of vagueness and overbreadth. Plaintiff further contends that the request appears to be intended to chill her interactions with City employees in violation of the First Amendment.

Defendants are not entitled to the information they seek regarding plaintiff's contacts with former and current City employees. Defendants' request for information regarding all of plaintiff's contacts, irrespective of the nature of the contact or context of the communication, is unlimited in scope and is therefore overbroad and invasive. Moreover, defendants have not shown how the information they seek regarding all such contacts is relevant to the issues in this case. Defendants' request for documents related to individuals plaintiff has identified as having knowledge of the allegations of the complaint is likewise overbroad and vague as defendants have neither attempted to narrow the category of such individuals nor limited the scope or context of any such documents. Finally, defendants may obtain information they seek regarding the biases of potential witnesses, whether plaintiff's contacts with other individuals are limited by her medical condition, and whether defendants' actions inhibited her attempts to market her services by less invasive means than an open-ended request for information pertaining to all of plaintiff's contacts. Accordingly, defendants' request for the overly inclusive information they

13

seek regarding plaintiff's contacts with former and current City employees (Interrogatory 10; Documents Requests 7, 8, 23) is denied.[3]

## IV. Conclusion

Defendants' motion to compel discovery (Doc. 23) is granted in part and denied in part. Defendants' motion to compel is: (1) **GRANTED** in part as to the request for information regarding plaintiff's income and sources of income during and after her employment with the City (Interrogatories 7, 8; Document Request 18); (2) **GRANTED** in part as to the request for plaintiff's medical records (Document Requests 14, 15, 16), with plaintiff to provide such records for the period January 1, 2005 to the date of trial in accordance with the terms of this order; (3) **DENIED** as to the request for information pertaining to plaintiff's employment and wages prior to her employment with the City (Interrogatory 9; Document Requests 7, 8, 23); and (4) **DENIED** as to the request for information regarding plaintiff's post-termination interactions with current and former City employees (Interrogatory 10; Document Requests 6, 13, 24).

In light of the dispositive motion deadline of May 31, 2013, plaintiff is ordered to provide the information and documents in response to these requests within **7 days** of the date of this Order.

**IT IS SO ORDERED.**

Date: 5/22/13

Karen L. Litkovitz
United States Magistrate Judge

---

[3] Because defendants are not entitled to the discovery they seek on these grounds, the Court need not address whether requiring plaintiff to disclose the information defendants seek regarding her association with past and current City employees would violate her First Amendment rights.